Strafford,
No. 4465.

STEPHEN SLEEPER *v.* WORLD OF MIRTH SHOW, INC.

Argued February 8, 1956.

Decided March 29, 1956.

*McCabe & Fisher* and *Harold D. Moran* (*Mr. Moran* orally), for the plaintiff.

*Burns, Calderwood & Bryant* and *Robert E. Hinchey* (*Mr. Hinchey* orally), for the defendant.

*Richard F. Upton*, as *amicus curiae*.

DUNCAN, J.  This action arises out of injuries received by the plaintiff when as a business invitee of the defendant, he attended an exhibition of wild animals in a tent erected by the defendant for the purpose.  The plaintiff with his wife and two children entered the tent after purchasing the necessary admission tickets. He testified that before entering he also purchased some peanuts from a vendor near the entrance to the tent, in response to the assertion that "they are good to eat and the animals love them. . . . "  After entering the tent he proceeded along a chain located about six feet from the front of a line of cages, tossing peanuts into the cages as he went.  There was evidence that a sign "in the

center" of the chain bore a warning which read either "Danger" or "Keep Out." The plaintiff returned to the exit by the same route. The hyena cage was nearest the exit. Both the plaintiff and his wife testified that the chain passed around or through a post in front of this cage, and that a rope then ran at an angle toward the cage and was attached to the second or third bar from the solid end of the cage next to the passageway from the tent. The plaintiff testified that he followed the rope along and tossed a peanut to the hyena; that as he did so the hyena reached through the bars, hooked the plaintiff's little finger with its claws and pulled his right hand and arm into the cage. He was unable to extricate himself until an attendant had poked at the hyena with a stick. In the meantime the animal bit his hand, seriously lacerating it, and damaging the third finger to such an extent that osteomyelitis resulted and amputation was eventually required.

The plaintiff has argued before this court that the defendant's liability as the keeper of a wild animal is absolute and not dependent upon proof of negligence. However the pre-trial order stated that the plaintiff claimed that the defendant was negligent, and the issue of the due care of each party was submitted to the jury. Since the plaintiff's exceptions are not transferred, the issue of whether the defendant was subject to absolute liability is not before us.

The defendant's motions for a nonsuit and a directed verdict raised the question of whether there was evidence to warrant a finding that the defendant was negligent, and the plaintiff free from fault. The motions were properly denied. Although it is argued that the plaintiff's writ did not allege the defendant's negligence, negligence was claimed on pre-trial, and the writ may be amended if necessary to conform to the proof even after the verdict. *Derby* v. *Company*, 100 N. H. 53. Under the circumstances the failure to allege negligence in the declaration cannot be held to preclude recovery.

The plaintiff's testimony concerning the arrangement of the tent and in particular the course of the rope or chain barring spectators from the hyena cage was contradicted by other evidence. Yet if believed by the jury, it warranted a finding that the defendant failed to provide adequate safeguards against the risk that its invitees might come too close to the cage and be injured, as was the plaintiff in this case. *Panorama Resort* v. *Nichols*, 165 Va. 289; *Bottcher* v. *Buck*, 265 Mass. 4. See McNeely: Dangerous

Animals, 37 Mich. L. Rev. 1181, 1191-1205; Prosser on Torts (2nd ed.) s. 57, p. 326.

The issue of the plaintiff's care was likewise a question for the jury. He testified that he knew nothing of hyenas and gave no thought to whether "the animal was wild enough to hurt me or not." While he conceded that his hand came within a foot of the bars as he tossed the peanut, he testified that he did not know at the time "that the animal could reach out between the bars and grab [his] bare hand," and that he was just following the guardrail "that was presented for the people to follow along." Although he was under a duty to give thought to his own safety (see *Robinson* v. *Railroad*, 85 N. H. 474, 476), his admitted failure to consider whether the animal was "wild enough to hurt" him cannot be held conclusive proof of lack of care, since it could be found that he had no knowledge of its characteristics. Even if the jury found in accordance with his prior testimony on deposition that he knew it was wild, and further, as he testified on trial, that just before the accident he had seen it reach between the bars to get a peanut "on the very edge" of the "little platform just outside the cage," it did not follow that he was for that reason bound to anticipate that the animal both could and would seize his hand in mid-air, a foot or more away from the bars.

As the Trial Court instructed the jury, the defendant owed the duty of making the premises safe, or giving warning of dangers of which it knew or in the exercise of reasonable care should have known. *Lynch* v. *Sprague*, 95 N. H. 485; *Monier* v. *Belzil*, 97 N. H. 176. The plaintiff was entitled to rely on the performance of this duty by the defendant and was not chargeable as a matter of law with knowledge that the hyena was both vicious and prehensile, so that it was dangerous to put his hand where the barrier provided by the defendant permitted. See *Smith* v. *Animal Farm*, 99 N. H. 243, 246. A finding that he was negligent, or that he knew of the risk which caused his injury and voluntarily encountered it carelessly, as the defendant argues (see Restatement, Torts, s. 515, *comment* b), was not compelled. *Bottcher* v. *Buck, supra*; *Stevens* v. *Hulse*, 263 N. Y. 421; *Hyde* v. *Utica*, 259 App. Div. 477; *Baugh* v. *Beatty*, 91 Cal. App. (2d) 786, 793; *Panorama Resort* v. *Nichols, supra*. And see, *Montrone* v. *Archambault*, 99 N. H. 179; *Butler* v. *King*, 99 N. H. 150. The exceptions to the denial of motions for a nonsuit and directed verdict are overruled.

In the course of direct examination of the plaintiff's wife, his

counsel inquired "what conversation" she had on the day following the accident with a man she thought was "the owner." Over objection, the witness was permitted to answer and replied: "Perhaps he was the manager, or owner, but anyhow, I asked him what could be done about it, if he had any insurance, because we had no money." She was interrupted by defendant's counsel, who moved for a mistrial on the ground that opposing counsel "elicited the information which resulted in insurance being mentioned . . . . " The Court denied the motion, and excluded further evidence of the conversation when the plaintiff sought to show an offer to settle. No error appears in the denial of the motion. What the fact was with respect to insurance was not disclosed. See *O'Brien* v. *Bernoi*, 297 Mass. 271. The jury was instructed "to decide this case . : . soley on the facts and sympathy or insurance cannot be considered by you gentlemen in any way." Denial of the defendant's motion to set aside the verdict because, among other reasons, "the jury was improperly influenced by the admission of insurance into the case," implied a finding that what transpired did not render the trial unfair. *Glidden* v. *Brown*, 99 N. H. 323. The Trial Court acted within its discretion in denying each of these motions and the findings implied in the action taken were not erroneous as a matter of law. *Perry* v. *Faulkner*, 100 N. H. 125.

The defendant excepted to receipt in evidence of testimony by the plaintiff's wife that conditions surrounding the hyena cage were different on the day after the accident. The testimony was received to rebut the inference which might be drawn from testimony of other witnesses that conditions which they saw some hours after the accident existed when it occurred, and not those described by the plaintiff. The tendency of the testimony objected to was to show that the evidence from the other witnesses did not relate to conditions existing when the accident occurred. It was properly admitted for this purpose. *Panagoulis* v. *Company*, 95 N. H. 524. The defendant sought no instruction limiting its use and its exception is therefore unavailing. *State* v. *Travis*, 82 N. H. 220, and cases cited.

The defendant also excepted to argument by plaintiff's counsel, the gist of which was that by calling the attention of police officers to altered conditions surrounding the cage soon after the accident, and by calling some of them to testify, the defendant sought to convey the impression that the altered conditions prevailed when the plaintiff was injured; conduct which counsel referred to as a

"frame-up." The defendant's view that the argument comes within the rule of *Christie* v. *Company*, 87 N. H. 236, and *Mann* v. *Company*, 90 N. H. 1, is thought to be untenable. The argument did not seek to draw an inference from the fact that investigation was made, but rather from the misleading effect of what it disclosed. See *Woodman* v. *Peck*, 90 N. H. 292, 294. The inference of the argument was one which could be drawn from the evidence and the language used was within the limits of legitimate advocacy. *Moulton* v. *Gaidmore Poultry Co.*, 100 N. H. 92.

Although the exception was not briefed, the defendant argued orally that the verdict was excessive. On the evidence denial of the motion to set the verdict aside upon the ground of excessiveness was not error. Other exceptions taken but not briefed merit no discussion. We are of the opinion that there was no reversible error. Accordingly there should be

*Judgment on the verdict.*

All concurred.